## SKELLY OIL CO. v. STANDLEY et al.

No. 21601. Opinion Filed Feb. 3, 1931.

Rehearing Denied March 31, 1931.

78

W. P. Z. German, Alvin Malony, Robert M. Turpin, and Geo. W. Cunningham, for petitioners.

Walter Mathews. J. Berry King, Atty. Gen., and Robert E. Crowe, Asst. Atty. Gen., for respondents.

RILEY, J. Respondent Standley sustained an accidental personal injury arising out of and in the course of his hazardous employment with petitioner on September 12, 1928. On September 18, 1928, employer filed with the Commission its first notice of injury, showing an injured finger, "wrenched lower part of body, slightly scratched face and leg bruised some." On October 26, 1928, the attending physician's report was filed, showing "crushed chest, cut leg, badly bruised face, mashed finger." On December 12, 1928, a stipulation of fact was filed showing "crushed chest, cut leg, bruised face, mashed finger," which stipulation was stamped approved by the Commission on December 13, 1928, and receipt for payment of a total sum of $187.55, on account of the disabilities resulting from injury sustained, is shown.

On November 1, 1929, Standley filed a "Motion of Claimant to Review Award" on the ground of a change in condition based upon the ground "that my arm is worse since I signed final receipt on December 10, 1928."

The Commission heard evidence as to a change in condition.

Dr. Manning testified that on September 12, 1928, he had examined Standley and found a bruised chest, face, **bruised right arm** and injured finger. His testimony continues:

"When we discharged him he didn't have the condition of the arm that shows now. and when he came back some days ago I found this condition of the arm—apparently an atrophy or separation of the muscle tissues in the arm, which did not exist at the time he went out of the hospital."

And as to the condition of Standley now, the doctor testified:

"Everything is confined to his right arm, so far as I can see."

As to the condition of Standley's arm at the time of the accident, the doctor testified:

"Q. Do you remember he had his arm hurt? A. The arm at the time was bruised and swollen and the whole right side was bruised."

Dr. D. L. Garrett testified that Standley's present condition of disability was due to the lesion of his right arm, and that about 50 per cent. disability was therein present; that there appeared to be a severed muscle in the right arm, which could have been due to the injury.

Standley testified he had received no injury since September 12, 1928, and that prior thereto his arm was all right with the muscle fully developed.

Dr. White testified also as to the present condition of Standley's arm and said the disability was 20 per cent.; that the disability now present, in his opinion, existed at the time of settlement.

The Commission found a 40 per cent. permanent disability to Standley's right arm resulting from the accident of September 12, 1928, and directed payment therefor, together with the medical expense incurred by the claimant as a result of this accidental injury, of which order and award petitioner Skelly Oil Company seek this review, contending: First:

"The claim of claimant is barred by the one year limitation provided by section 7301, C. O. S. 1921, for the reason that he did not file a claim for compensation for injury

to his right arm with the Commission within one year after the date of injury."

Section 7301, C. O. S. 1921, provides:

"The right to claim compensation under this act shall be forever barred unless within one year after the injury a claim for compensation thereunder shall be filed with the Commission."

The memorandum or agreement as to the facts herein entered into by the parties and filed under provisions of section 7294, C. O. S. 1921, as amended by S. L. 1923, ch. 61, p. 125, sec. 7, "is the basis of the award of the Industrial Commission, and an award made thereon has the same force and effect as an award made upon a hearing and may be reviewed under the provisions of section 7296, C. O. S. 1921." St. Joseph Mining Co. v. Pettitt. 90 Okla. 242, 216 Pac. 657.

The stipulation was in lieu of a claim. It would not be compatible with our idea of justice to permit an injured workman to be lulled into a sense of security by an agreement as to the facts of an injury, paid thereon, and when the injury became aggravated by a change in condition, denied the benefits of section 7296, upon the ground that he had filed no claim and was therefore barred by the statute of limitation.

So, then, we hold that the agreement as to the facts substituted for a claim. True this agreement of December 10, 1928, did not mention an injury to the arm, but merely recited an aforesaid "crushed chest, cut leg, bruised face and mashed finger."

The case of Ehrhart v. Indus. Accident Commission, 172 Cal. 621, 158 Pac. 193, Ann. Cas. 1917E, 465, cited in the case of Cagle v. Federal Mining & Smelting Co., 112 Okla. 247, 240 Pac. 617, holds that under their statute similar to ours (section 7296, supra, providing for a review of an award by the Commission on ground of change in condition and empowering the Commission on such review to "end, diminish or increase" compensation previously awarded), the Commission having awarded compensation for a leg injury, it could not after the lapse of time provided by their statute of limitation award claimant compensation for a lung injury suffered in the same accident, but which latter injury had not been previously reported.

The Cagle Case, supra, holds a claim made for an injury more than six months after the accident and not reported in the original claim cannot become the basis for modifying an award upon a ground of change in condition (section 7296) when "the later injury is disassociated as an effect from the first injury."

We decline to follow the dictum contained in the Cagle Case, which approves the reasoning in the Ehrhart Case. The dissenting opinion in the Ehrhart Case (Cal.) is in line with our view.

The stipulation and agreement of December 10, 1928, was in contemplation of an accidental injury within the terms of the act.

The extent of the accident was agreed to be "temporary total," the payment was not for any specific injury, as for example "crushed chest, cut leg, bruised face and mashed finger," but "on account of disability resulting from injury sustained by claimant on above date." True, the disability was based upon injuries specifically enumerated.

In this case the injured employee did institute proceedings within the one-year statutory period (said by petitioner to be a bar to recovery for this specific injury to the employee's arm). Jurisdiction was thus vested in the Commission so as to cover any other disability resulting from the accident.

It is insisted that disability resulting from the injury to the arm was not claimed or made a part of the agreed statement of facts, and, therefore, the Commission is without jurisdiction to act in review of the aggravated condition as contemplated by section 7296, supra. This is tantamount to saying that the full effect of the accident must be known by the claimant and reported by him within the statutory period, and, if not, compensation cannot be allowed. Such a holding would be contrary to the spirit of the act as well as the liberal interpretation policy adopted. Moreover, section 7296 provides for a review of an award "on the ground of a change in conditions." A liberal interpretation impels us to hold that the change in condition, when proven, permits a continuing jurisdiction to end, diminish, or increase compensation previously awarded, even though the change in condition manifests itself in injuries not expressly enumerated in the original award, but yet attributable to the original accident.

Section 7325, C. O. S. 1921, prior to amendment, S. L. 1923, p. 128, sec. 13, was considered by this court as warranting a continuing jurisdiction over "each case." Sun Coal Co. v. State Indus. Com., 84 Okla. 164, 203 Pac. 1042.

Choctaw Portland Cement Co. v. Lamb, 79 Okla. 109, 189 Pac. 750, so holds:

"The power and jurisdiction of the State Industrial Commission under the Workmen's

Compensation Act, ch. 246, S. L. 1915, over each case submitted to it is continuing. * * *"

United States Fidelity & Guaranty Co. v. Harrison, 125 Okla. 90, 256 Pac. 752, so holds, in a case where the Commission in its original award had overlooked a "back injury," but made an award for a "leg injury." However, therein claim was originally filed for both injuries.

Consequently we hold that the agreement constituted a claim; that the same was filed within the statutory time; that the claim was one for disability resulting from the accident of September 12, 1928, all of which made a case of which the Commission had continuing jurisdiction, as heretofore recited, so that the statute of limitation urged was not and is not applicable.

Petitioner's second proposition is identical with its first. It is that the motion to reopen the case and for an additional compensation did not constitute a sufficient application to give the Commission jurisdiction to consider the injury to claimant's right arm, which injury is disassociated as an effect from the injuries considered in the previous settlement and compensation.

The second proposition is without merit.

The third proposition is that the evidence adduced did not show a change in condition. It is true section 7296, supra, presupposes a prior award allowing compensation for an injury as a condition to review an award. That section prescribes that "on the ground of a change in condition" the Commission may review an award and make a new award ending, diminishing, or increasing compensation previously awarded.

A liberal interpretation policy persuades us that "change in condition" has to do with the disability of the injured workman resulting from the accident rather than a change in condition of specific injuries theretofore compensated, and that compensation to be ended, diminished, or increased is to be considered as a disability resulting from the accident rather than specific injuries theretofore compensated.

The record evidence shows that Standley's disability as a result of his arm injury has increased. The evidence, epitomized, is that when first examined his arm was bruised, whereas now by atrophy the muscles are severed.

The fourth and last contention is that the Commission was without authority of law to direct respondent to pay medical expense incurred by claimant. The petitioner complains that there was no evidence of medical expense. The order was to pay medical expense incurred by claimant. Since no expense was proven, petitioner is not injured. The employer is liable for proper medical expense when and if Standley presents medical expense to petitioner. Should they be improper, the matter may yet be adjudicated by the Commission.

Judgment affirmed.

LESTER, C. J., CLARK, V. C. J., and HEFNER, CULLISON, ANDREWS, and McNEILL, JJ., concur. SWINDALL, J., dissents.

---

SWINDALL, J. (dissenting). I cannot agree with the majority opinion in this case. Paul B. Standley, one of the respondents, was employed by the Skelly Oil Company at the time of the injury. On November 30, 1928, the petitioner and respondent reached an agreement as to the facts with relation to the injuries for which compensation was claimed under the Workmen's Compensation Act. This stipulation recites:

"Claim No. A-24732. We, the parties to this instrument, have reached an agreement in regard to the facts with relation to an injury sustained by the claimant, and submit the following stipulation of facts relative thereto, for the order, decision or award of the State Industrial Commission:

"Stipulation and Receipt.

"Injury occurred September 12, 1928; disability ended November 30, 1928. Nature of injury—crushed chest, cut leg, bruised face and mashed finger. Extent of disability—temporary total. Employee quit work September 12, 1928. Employee returned to work December 1, 1928. Did employee receive full wages for day of injury?—No. Average weekly wages—$4.50. Rate of Compensation—$17.31. Compensation began September 17, 1928. Total paid employee—$187.55. Period of disability—11 weeks and 3 days. Total hospital and medical expenses—$172.00. Received of Skelly Oil Company the sum of fourteen and 45/100 dollars ($14.45), making in all, with weekly payments already received by me, the total sum of one hundred eighty-seven and 55/100 ($187.55), on account of disability resulting from injury sustained by claimant on above date. The foregoing stipulation and receipt is herewith submitted to the Commission for its order, decision or award.

"Witness my hand this the 10th day of December, 1928.

"In the presence of:
"Norman J. Blankenship }
"H. S. Mercer } Witnesses
"Skelly Oil Company_____Respondent.

"Own Risk ............Insurance Carrier.
"By ..........C. L. Swim.........Adjuster.
  "(Signed) P. B. Standley,
              "917 N. Noble.....Address.
              "Payne County, Cushing,
                        "Oklahoma.
          "(Closed)"

This stipulation and receipt was received by the State Industrial Commission December 12, 1928, and approved by it on December 13, 1928.

The employee made no claim for compensation for any injury to his right arm at any time within the year next after the date of said injury, and did not file a motion to review the award until after the expiration of one year.

The stipulation was filed under section 7294, as amended by section 7, of chapter 61, Session Laws of 1923, which in so far as applies to the agreed statement of facts is as follows:

"Any time after the expiration of the first five days of disability on the part of the injured employee, a claim for compensation may be presented to the Commission. If the employer and the injured employee shall reach an agreement as to the facts with relation to an injury, for which compensation is claimed under this act, a memorandum of such agreement, in form as prescribed by the Commission, and signed by both the employer and employee, may be immediately filed by the Commission, and if approved by the Commission, shall, in the absence of fraud, be deemed binding upon the parties thereto, such agreement shall be approved by the Commission only when the terms conform to the provisions of this act."

There is no contention that there was any fraud in this settlement.

"'Deemed' is the equivalent of 'considered' or 'judged,' and therefore whatever an act of Congress requires to be deemed or taken as true of any person or thing must in law be considered as having been duly adjudged or established, concerning such person or thing, and have force and effect accordingly." Leonard v. Grant (C. C.) 5 Fed. 11, 16.

One meaning of "deem" is to "adjudge." Town of Checotah v. Town of Eufaula, 31 Okla. 85, 119 Pac. 1014. At page 94 of the Oklahoma Report, the court says:

"The word 'deem,' according to Webster, is defined as 'to sit in judgment over or upon,' and the word 'deemed' from such definition would be construed to mean 'adjudged'."

So, in this case, using the word "deemed" in its legislative sense, the act would read:

"The agreement, if approved by the Commission, shall, in the absence of fraud be adjudged binding upon the parties thereto."

Section 7297, as amended by section 8, chapter 61, Session Laws 1923, provides that the award or decision of the Commission shall be final and conclusive upon all questions within its jurisdiction between the parties, unless within 30 days after a copy of such award or decision has been sent by said Commission to the parties affected an action is commenced in the Supreme Court to review such award or decision.

Section 7296 empowers the Commission, upon its own motion or upon the application of any party in interest, on the ground of a change in condition, to at any time review any award, and, on such review, may make an award ending, diminishing, or increasing compensation previously awarded, subject to the maximum or minimum provided in this act, and it shall state its conclusions of facts and rules of law and shall immediately send to the parties a copy of the award.

In this case, the parties submitted an agreed statement of facts which was approved by the Commission and an award made for the injuries therein specified, which were crushed chest, cut leg, bruised face, and mashed finger, and when this stipulation was approved by the Commission, its award became final and conclusive upon all questions submitted to the Commission by said parties, and the Commission thereafter had the right to review its judgment or award of compensation for crushed chest, cut leg, bruised face, or mashed finger in the event competent evidence was offered showing a change in condition resulting from the original injuries, which were considered and adjudged in the agreed statement of fact. However, in my opinion, the Commission did not have any power or jurisdiction after the expiration of one year to award compensation for an injury entirely disassociated as an effect from the first injury.

This is clearly the intent of the act, as well as the former holding of this court.

This court in the case of Cagle v. Federal Mining & Smelting Company, 112 Okla. 247, 240 Pac. 617, in the first paragraph of the syllabus, uses this language:

"A claim made for a personal injury more than six months after the date of an accident cannot then become the basis for modifying an award made by the Industrial Commission for an injury suffered from an accident, upon the ground of a change in condition as defined by section 7296, C. O. S. 1921, provided the latter injury is disassociated as an effect from the first injury."

The statute, section 7301, C. O. S. 1921,

fixes the time within which a claim for accidental injury must be filed at not more than one year after the date of the injury. The mashed finger was on the left hand. It is not contended that the injuries to the right arm were associated with or grew out of or were the result of any of the injuries adjudicated by the Commission in approving the stipulation of facts entered into between the parties.

This court, in Cagle v. Federal Mining & Smelting Co., supra, followed the decision of the Supreme Court of California in the case of Ehrhart v. Industrial Accident Commission of State of California, 172 Cal. 621, 158 Pac. 193, Ann. Cas. 1917E, 465. The majority opinion says:

"We decline to follow the dictum contained in the Cagle Case which approves the reasoning in the Ehrhart Case."

I am not objecting for the reason that my associates refuse to follow the dictum in the Cagle Case; however, I am trying to point out herein that they are overlooking the syllabus in the Cagle Case, which is the law of that case, and in my opinion should govern in this case.

If a majority of the court, after further consideration have arrived at the conclusion, the Cagle Case is not sound, then it should be overruled. While we did not cite it in K. D. Oil Co. v. Datel, 145 Okla. 264, 292 Pac. 564, we followed the rule therein announced and refused compensation for a disassociated injury for which compensation was not originally claimed. I am willing to follow any rule the majority of this court announces, I feel this to be my duty. I will follow the decision in this case if it becomes final as the law of this state, but I do not see how the decision in this case and the Cagle Case can each be the law of this state.

If we are going to lay down a rule in this case that after compensation has been awarded for certain specified injuries a claimant, on the ground of a change in condition, may file a motion to review that judgment and may upon the hearing of such motion to review offer proof on a separate and distinct injury, then I am frank to confess that I do not know just where a case may end, or when the findings and judgment of the Commission may become final. If the Commission has authority upon a motion to review an award for compensation for an injury not included in the agreed statement of facts and which does not result from a change in condition of any of such injuries, then the claimant may five years from now file a motion to review on the ground of a change in condition; that the time of the accident he injured an eye and recovered compensation for the injured eye; then five years later state that he sprained his knee and recover compensation for that injury; and five years later file another motion that he sprained an ankle and offer proof upon that, and so on indefinitely until he has recovered compensation for injuries to his entire anatomy.

In my opinion, the very object of the statute in requiring claims to be filed within one year was to call attention to the injuries so that the same might be examined and the nature and extent thereof determined, and that it is only in cases where there has been a change in the injury complained of at the time of filing the claim, within one year after the date of the injury, that compensation may be awarded.

I do not want to be understood as holding in this case that the claim was fictitious or fraudulent, but we cannot change the law to suit each particular case, and while to hold that the claimant in this case cannot recover on a ground of a change in condition because the injury for which he now seeks additional compensation is disassociated from the original injuries for which he was awarded compensation, might work a hardship in this particular case, yet to hold that he may recover for a disassociated injury would be to lay down a very dangerous precedent for our future guidance, and encourage fraud and presentation of stale claims which are not meritorious.